UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TESSA VIDUENO                             CIVIL ACTION NO. 6:14-cv-02618

VERSUS                                    JUDGE HAIK

COMMISSIONER OF                           MAGISTRATE JUDGE HANNA
SOCIAL SECURITY


## REPORT  AND  RECOMMENDATION


Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Tessa Vidueno, fully exhausted her administrative remedies prior

to filing this action in federal court.  Ms. Vidueno filed an application for disability

insurance benefits ("DIB"), alleging disability beginning on December 6, 2011.[1]  Her

application was denied.[2]  Ms. Vidueno requested a hearing,[3] which was held on April

25, 2013 before Administrative Law Judge Robert Grant.[4]  The ALJ issued a decision

---

[1]      Rec. Doc. 5-1 at 40.

[2]      Rec. Doc. 5-1 at 39, 47.

[3]      Rec. Doc. 5-1 at 56.

[4]      The hearing transcript is found at Rec. Doc. 5-1 at 24-38.

on May 20, 2013,[5] concluding that Ms. Vidueno was not disabled within the meaning of the Social Security Act ("the Act") from December 6, 2011 through the date of the decision.  Ms. Vidueno asked for review of the decision, but the Appeals Council concluded on June 27, 2014 that no basis existed for review of the ALJ's decision.[6] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  Ms. Vidueno then filed this action seeking review of the Commissioner's decision.

## FACTUAL BACKGROUND

Ms. Vidueno was born on April 12, 1966.[7]  At the time of the ALJ's decision, she was forty-seven years old.  She graduated from high school[8] and has past relevant work experience as a school bus driver, teacher's aide, medical transportation driver, valet driver, and instrument technician in a refinery.[9]  She alleges that she has been disabled since December 6, 2011[10] due to fibromyalgia and a back condition.[11]  Her

---

[5]      Rec. Doc. 5-1 at 15-22.

[6]      Rec. Doc. 5-1 at 4-6.

[7]      Rec. Doc. 5-1 at 40, 121.

[8]      Rec. Doc. 5-1 at 30.

[9]      Rec. Doc. 5-1 at 30, 45, 126, 135.

[10]     Rec. Doc. 5-1 at 41, 99, 121.

[11]     Rec. Doc. 5-1 at 125.

alleged disability onset date coincides with the date on which she first underwent surgery on her lumbar spine.

The record indicates that the claimant treated with Dr. Kenneth Ritter from January 2011 to April 2012.[12]  At many of her appointments with Dr. Ritter, the plaintiff complained of generalized pain, variously described as "bone pain all over," "aching all over," "lots of pain," "still pain all over," "still hurting," "still leg pain," "still lots of leg pain," and "pain all over (not just legs)."  Dr. Ritter diagnosed fibromyalgia and prescribed several different medications.  On November 28, 2011, he noted that the claimant planned to see a neurologist with regard to back and left leg pain.

An MRI of the claimant's lumbar spine, conducted on October 3, 2011, indicated a left foraminal disc protrusion at the L3-4 level not causing any displacement of the nerve root.[13]  X-rays of her lumbar spine, taken on November 30, 2011, indicated minimal discogenic degenerative change at L3-4 and L5-S1.[14]  The claimant saw Dr. Thomas V. Bertuccini, a neurological surgeon, that same day.[15]  The

---

[12]    Rec. Doc. 5-1 at 217-223.

[13]    Rec. Doc. 5-1 at 178.

[14]    Rec. Doc. 5-1 at 207.

[15]    Rec. Doc. 5-1 at 189-190.

claimant reported low back, left buttock, and left leg pain with intermittent numbness, tingling, and a sense of weakness.  She described her pain as constant, aching, burning, throbbing, and stabbing pain.  She reported that the pain began spontaneously about four months earlier and progressively worsened.  She reported no right leg symptoms.  According to information supplied by the claimant, her prior physician had ordered physical therapy,[16] which the claimant contended provided no relief from the pain.  She was taking Lyrica, Tramadol, and Lortab, which she also stated provided no pain relief.  She stated that she had undergone two ineffective lumbar epidural steroid injections, but there are no treatment notes or other documentation of those injections in the record.  Upon examination, Dr. Bertuccini found tenderness in the low back on palpation, a decreased range of motion with pain, a positive straight leg raise test on the left, and decreased sensation to touch corresponding to L4.   Dr. Bertuccini diagnosed a moderate herniated nucleus pulposus at L3-4 with nerve compression.  He recommended a microdiscectomy.  At this time of this first visit with Dr. Bertuccini, Ms. Vidueno was working full time.

---

[16]      The record contains no evidence documenting Ms. Vidueno's treatment with Dr. Therese Ritter.

On December 5, 2011, Dr. Bertuccini saw the claimant for a pre-operative visit.[17]

The next day, December 6, 2011, the claimant was admitted to Lafayette Surgical Specialty Hospital in Lafayette, Louisiana, and Dr. Bertuccini performed a laminotomy with decompression of the nerve root, including partial facetectomy, foraminotomy, and excision of herniated intervertebral disc at L3-4.[18]

The claimant had a post-operative follow-up visit with Dr. Bertuccini's nurse on December 15, 2011,[19] and she saw Dr. Bertuccini on January 9, 2012.[20]  At that time, the claimant reported that sixty percent of her pre-operative low back, left buttock, and left leg pain was resolved on some days, but she also reported intermittent mild tingling and a sense of weakness in her left leg.  She was taking Lortab, which provided good pain relief.  Upon examination, the straight leg raise test on her left leg was no longer positive.  Sensation in her lower extremities was normal and testing against resistance revealed no evidence of weakness in her legs.  Dr.

---

[17]     Rec. Doc. 5-1 at 187-188.

[18]     Rec. Doc. 5-1 at 192-193, 198, 199-202, 205, 206.

[19]     Rec. Doc. 5-1 at 186.

[20]     Rec. Doc. 5-1 at 184-185.

Bertuccini prescribed Flexeril for muscle spasms, analgesics for pain as needed, use of a TENS unit at home, and walking.

The claimant again saw Dr. Bertuccini on February 27, 2012.[21]  She reported seventy percent relief of her pre-operative low back, left buttock, and left leg pain on some days, but intermittent mild to moderate pain in the low back, left hip, and left leg.  She reported one episode of numbness or tingling in the left leg two weeks earlier.  She denied any weakness in her left leg.  She was continuing to take Lortab as needed, which gave her good pain relief.  She had not returned to work.

The claimant next saw Dr. Bertuccini on April 11, 2012.[22]  She still had not returned to work.  At this visit, she reported severe pain in the low back as well as bilateral leg pain, worse on the left.  She stated that this pain had begun spontaneously one month earlier.  She also reported a sense of weakness in her left leg as well as intermittent numbness and tingling.  Examination showed a decreased range of motion and a positive straight leg raise test on the left leg.  Her movement was very limited due to pain.  Dr. Bertuccini diagnosed recurrent severe, incapacitating back and left leg pain.  He suspected a recurrent herniated nucleus

---

[21]     Rec. Doc. 5-1 at 182-183.

[22]     Rec. Doc. 5-1 at 180-181.

pulposus.  He recommended a lumbar MRI and indicated that a further surgical procedure might be an appropriate option.

An MRI was performed on April 11, 2012, which revealed a large recurrent disk protrusion on L3-4.[23]

On May 7, 2012, the claimant saw Dr. Bertuccini for a pre-operative visit.[24]

Dr. Bertuccini performed a second surgical procedure at Lafayette Surgical Specialty Hospital on May 15, 2012.[25]  The procedure was described as hemilaminectomy with decompression of nerve root, including partial facetectomy, foraminotomy, and excision of herniated intervertebral disk, re-exploration, at L3-4. The surgical report indicates that there was extensive scarring, much of which was resected, and "a considerable amount of disk material was removed."

On May 29, 2012, the claimant had a follow-up visit with Dr. Bertuccini's nurse.[26]  She then followed up with Dr. Bertuccini on June 13, 2012.[27]  At that time, the claimant reported a ten percent improvement in her pre-operative low back and left leg pain, but she also reported constant moderate low back and left leg pain.

---

[23]     Rec. Doc. 5-1 at 196-197.

[24]     Rec. Doc. 5-1 at 230-231.

[25]     Rec. Doc. 5-1 at 239-240.

[26]     Rec. Doc. 5-1 at 229.

[27]     Rec. Doc. 5-1 at 227-228.

Upon examination, no muscle spasms were detected, the straight leg raise test was negative, but her gait was slow and cautious due to pain.  She had normal motor tone in her leg muscles, testing against resistance showed no evidence of weakness, toe and heel stand were normal, and sensation in her legs was normal.  Lortab was prescribed for pain, which was to be taken as needed.  The claimant was to use a TENS unit, go to physical therapy, walk, and modify her activity.  Dr. Bertuccini also noted that time would be a factor in her recovery.  He also stated that "I suspect she will have a long post op course of pain and further options are limited."  On that same date, Dr. Bertuccini signed a form indicating that the claimant is unable to work until further notice.[28]

The claimant again saw Dr. Bertuccini on October 10, 2012.[29]  She reported constant moderate low back and bilateral leg pain, stated to be at three or four on a scale of one to ten, with intermittent numbness and tingling in her left leg.  She denied weakness in her legs.  She was wearing a lumbar brace.  Dr. Bertuccini noted that she was taking Lortab, which "gives her good pain relief."  Dr. Bertuccini's examination of the claimant showed no muscle spasms, negative straight leg raise tests, a slow gait due to pain, normal motor tone in both legs, no evidence of

---

[28]     Rec. Doc. 5-1 at 241.

[29]     Rec. Doc. 5-1 at 253-254.

weakness, normal toe and heel standing, and normal sensation in both legs.  He recommended a lumbrosacral corset, analgesic medication as needed, and noted that a referral to a pain management specialist might be necessary.

The claimant visited Dr. Bertuccini again on January 14, 2013.[30]  She reported mild to moderate constant pain in her low back and left leg, but reported an improvement in her right leg pain.  She denied numbness or tingling in her legs, but told Dr. Bertuccini that her pain symptoms prevent her from working.  She takes Lortab, which "gives her good pain relief."  She also told Dr. Bertuccini that she had a lumbar epidural steroid injection in October 2012, which gave her good pain relief for three weeks.  Dr. Bertuccini noted that the etiology of her right leg pain was obscure, and that operative treatment was not a consideration.  He recommended anesthesia pain management, a lumbrosacral corset, and analgesic medication as needed.

The record contains no treatment notes from Dr. Therese Ritter, the doctor who referred Ms. Vidueno to Dr. Bertuccini, or from Dr. Lesecki, the physician who allegedly administered lumber epidural steroid injections.

Ms. Vidueno's hearing was held approximately three months after her last visit with Dr. Bertuccini that is documented in the record.  At the hearing, she was wearing

---

[30]      Rec. Doc. 5-1 at 251-252.

-9-

her back brace and denied using a walker or other assistive devices.  She testified that she was still having problems with her low back and right leg, stating "I'm always in some type of pain."  She testified that the pain on the right side of her low back had worsened over the previous six months.  She stated that she deals with the pain by limiting what she does throughout the day.  She reported that she began having pain in her right knee approximately one month before the hearing.  She also reported numbness and swelling in her knee.  She stated that she takes medication for pain, an anti-depressant, and vitamins.  She complained that the medication she takes makes her sleepy.  But she also testified that she has no problems dressing or bathing herself and stated that she does household tasks like laundry and dishes in short spurts.  She testified that resting and taking pain medication eases the pain.  She denied that her condition waxes and wanes, testifying that every day is about the same.  She said that she spends her days at home, sitting and resting.

<u>ANALYSIS</u>

**A.**    <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the

proper legal standards were used in evaluating the evidence.[31]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[33]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[34]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[35]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the

---

[31]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[32]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[33]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[34]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[35]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

-11-

courts.[36]   Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[37]

**B.**    **Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[38]   The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[39]   A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age,

---

[36]    *Martinez v. Chater*, 64 F.3d at 174.

[37]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[38]    See 42 U.S.C. § 423(a).

[39]    42 U.S.C. § 1382c(a)(3)(A).

-12-

education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[40]

## C.   **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled will be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional

---

[40]   42 U.S.C. § 1382c(a)(3)(B).

capacity will be considered to determine if the claimant can perform any other work at step five.[41]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[42] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[43]   The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[44]

The claimant bears the burden of proof on the first four steps.[45]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[46]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by

---

[41]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[42]      20 C.F.R. § 404.1520(a)(4).

[43]      20 C.F.R. § 404.1545(a)(1).

[44]      20 C.F.R. § 404.1520(e).

[45]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[46]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

expert vocational testimony, or by other similar evidence.[47]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[48]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[49]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that Ms. Vidueno has not engaged in substantial gainful activity since December 6, 2011.[50]  This finding is supported by the evidence in the record.

At step two, the ALJ found that Ms. Vidueno has the following severe impairments:  status post lumbar surgery times two and lumbar degenerative disc disease.[51]  This finding is supported by evidence in the record.

---

[47]      *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[48]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[49]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[50]      Rec. Doc. 5-1 at 15.

[51]      Rec. Doc. 5-1 at 15.

At step three, the ALJ found that Ms. Vidueno has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[52] The claimant does not challenge this finding.

The ALJ found that Ms. Vidueno has the residual functional capacity to perform the full range of light work.[53]

At step four, the ALJ found that Ms. Vidueno is capable of performing her past relevant work as a teacher's aide, valet, and instrument technician. Accordingly, the ALJ found that Ms. Hayes was not disabled from December 6, 2011 through May 20, 2013 (the date of the decision) because she is capable of performing her past relevant work.[54] Ms. Vidueno challenges this finding.

## E. THE ALLEGATIONS OF ERROR

Ms. Vidueno claims that the ALJ erred in assigning great weight to the opinions of the non-examining state agency physician concerning her residual functional capacity while assigning little weight to the opinions of her treating physician concerning her disability status. Ms. Vidueno also claims that the ALJ

---

[52]     Rec. Doc. 5-1 at 17.

[53]     Rec. Doc. 5-1 at 16.

[54]     Rec. Doc. 5-1 at 21-22.

erred at step four by relying upon the vocational expert's response to a hypothetical question that did not fully incorporate the claimant's problems and limitations.

## F.   DID THE ALJ ERR IN ASSIGNING WEIGHT TO THE PHYSICIANS' OPINIONS?

In his most recent treatment notes, Dr. Bertuccini opined that Ms. Vidueno is "unable to work for the immediate future,"[55] echoing similar statements made in his treatment notes of October 10, 2012,[56] and June 13, 2012.[57]  The ALJ expressly gave this opinion little weight.  On the other hand, the ALJ expressly gave great weight to non-examining agency consultant Dr. Charles Lee's opinion that Ms. Vidueno can lift or carry twenty pounds occasionally, ten pounds frequently, sit for six hours out of an eight hour work day, and stand or walk for six hours out of an eight hour work day[58] and thus can perform light work.[59]  The claimant contends that the ALJ's assignment of weight to the physicians' opinions was error.

---

[55]     Rec. Doc. 5-1 at 252.

[56]     Rec. Doc. 5-1 at 254.

[57]     Rec. Doc. 5-1 at 241.

[58]     Rec. Doc. 5-1 at 19.

[59]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  Furthermore,"the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday."  Social Security Ruling 83–10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

-17-

The ALJ has sole responsibility for determining the claimant's disability status.[60] Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[61] In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[62] If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for doing so.[63] Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[64] Before declining to give any weight to the opinions of a treating doctor, an ALJ must also consider the length of treatment by the physician, the

---

[60]    *Newton v. Apfel*, 209 F.3d at 455.

[61]    *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[62]    20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[63]    *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-44 (5th Cir. 2009).

[64]    *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-44.

frequency of his examination of the claimant, the nature and extent of the doctor-patient relationship, the support provided by other evidence, the consistency of the treating physician's opinion with the record, and the treating doctor's area of specialization, if any.[65]

Although the ALJ did not specifically address each of the relevant factors, the ALJ did explain that Dr. Bertuccini's findings, based on his examination of the claimant, do not support his opinion about her ability to work.  Dr. Bertuccini's most recent objective findings were:  normal motor tone in both legs, no evidence of weakness in either leg, normal toe and heel standing, normal sensation in both legs, negative straight leg raise in both legs, no muscle spasm, no masses, but a limited range of motion that causes pain, low back moderately tender to palpation, and left SI joint tenderness.  Furthermore, Dr. Bertuccini stated that the claimant's "[p]ain symptoms are significant enough that she is unable to work."  Thus, Dr. Bertuccini's opinion appears to be based on his appreciation of Ms. Vidueno's pain complaints rather than on his objective findings.

---

[65]     *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 456.

Pain can constitute a disabling impairment,[66] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[67]  Mild or moderate pain is not disabling.   Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[68]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[69]   The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[70]  The absence of objective factors can justify the conclusion that a witness lacks credibility.[71]

---

[66]     *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[67]     *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990).

[68]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[69]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[70]     *Harper v. Sullivan*, 887 F.2d at 96.

[71]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

In this case, there is evidence of a condition that can cause pain.  But the evidence does not show that Ms. Vidueno's pain is constant, unremitting, and wholly unresponsive to therapeutic treatment.  To the contrary, Dr. Bertuccini's most recent treatment note describes Ms. Vidueno's pain as "mild to moderate," indicates that he is prescribing Lortab for Ms. Vidueno, states that her pain medication should be taken as needed, and states that the Lortab "gives her good pain relief."  Dr. Bertuccini also indicates that Ms. Vidueno obtained temporary pain relief from a lumbar epidural steroid injection.  At the hearing, Ms. Vidueno also acknowledged that taking medication relieves her pain.  Thus, her pain can be controlled with medication and consequently is not disabling.

It should also be noted that Dr. Bertuccini did not specifically evaluate Ms. Vidueno's functional capacity.  He did not opine as to how long she can sit or stand during a work day, how much weight she can lift or carry, or make any other specific findings of that nature.  Therefore, Dr. Bertuccini's opinion is conclusory and is not supported by substantial evidence in the record.  For that reason, the ALJ had good cause to give it little weight.

The claimant criticizes the ALJ's giving Dr. Lee's opinion great weight on the basis that Dr. Lee never examined Ms. Vidueno and offered his opinions before Ms. Vidueno had the second surgery.  These factors do call Dr. Lee's opinions into

question.  However, as the ALJ noted, there is nothing in the record – other than Ms. Vidueno's subjective pain complaints – suggesting that Dr. Lee's conclusions are incorrect.   "The ALJ as factfinder has the sole responsibility for weighing the evidence"[72] and has the responsibility to resolve conflicts in the evidence.[73]   The decision made by the ALJ in this case is supported by evidence in the record and must be affirmed.

**G.    Did the ALJ Err in Relying Upon the Vocational Expert's Response to a Hypothetical Question?**

The ALJ made his decision that Ms. Vidueno is not disabled at step four of the sequential analysis, finding that she retains the residual functional capacity to perform her relevant past work.  The ruling does not indicate that the ALJ relied on the vocational expert's response to any hypothetical question in reaching that decision. Instead, the ruling indicates that the vocational expert testified that three of the claimant's past jobs – instrument technician, valet, and teacher's aide – are classified as light.   The ALJ accepted that testimony and found that the claimant can still perform those jobs.  Despite finding that the claimant can perform her past relevant

---

[72]      *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

[73]      *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

-22-

work, the ALJ also proceeded to step five and found that there are sedentary jobs in the national economy that the claimant can perform.

The claimant's representative asked questions at the hearing suggesting that the claimant cannot perform her past relevant work or perform the suggested sedentary jobs because she would need unscheduled rest periods and because her medication affects her ability to concentrate for at least twenty percent of the work day.[74]  But there is no evidence in the record supporting either of the two suggested restrictions on the claimant's ability to work.

While the claimant testified at the hearing that she limits her activities and rests in order to control her pain, there is no testimony from any doctor that rest periods in excess of those ordinarily provided by an employer would be required for the claimant to return to the work force.  She also testified at the hearing that her medication makes her drowsy, but the record contains no evidence that she ever complained of this alleged side effect to Dr. Bertuccini or sought to have him alter her medication to avoid this alleged side effect.  Therefore, the claimant did not prove that her return to work must be predicated on either of the two suggested accommodations.  The plaintiff has the burden of proof at step four.[75]  But she failed

---

[74]     Rec. Doc. 5-1 at 37.

[75]     *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).

-23-

to carry the burden of proving that she can no longer perform her past relevant work.

Therefore, the ALJ did not err in ruling that she is not disabled.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d

1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 4th day of November 2015.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:     11/5/2015
BY:          EFA
TO:          RTH
                 pj

-25-